IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **COREBRACE LLC,**     Plaintiff,  vs.  **STAR SEISMIC LLC,**     Defendant. | **MEMORANDUM DECISION AND ORDER**  Case No.  2:08CV11DAK |

     This matter is before the court on Defendant Star Seismic, LLC's Motion to Dismiss Plaintiff's Complaint.  The court held a hearing on the motion on May 21, 2008.  At the hearing, Plaintiff was represented by Charles L. Roberts, L. David Griffin, Matthew A. Barlow, and Mark E. Wilkey, and Defendant was represented by H. Dickson Burton and Brick G. Power.  The court took the matter under advisement.  The court has carefully considered the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

     This case involves three claims: patent infringement, breach of a license agreement, and breach of a settlement agreement.  The patent at issue, United States Patent No. 7,188,452 ("the '452 Patent"), discloses and claims a novel buckling restrained brace for use in the fabrication of steel-framed buildings.  Star Seismic entered into a license agreement with the inventor Benne

Sridhara.  Corebrace then bought the patent from Sridhara, purchasing "all right, title, and interest" in the patent.

CoreBrace sent a letter, dated January 4, 2008 to Star Seismic stating that the License between Star Seismic and Sridhara was terminated.  CoreBrace contends that Star Seismic breached the License by using third-party contractors to manufacture licensed products.  Star Seismic asserts that CoreBrace's letter did not terminate the License because the License contains requirements for termination.  The License provides that it can be terminated if there is a breach, written notice of the breach, and a thirty-day opportunity to cure the breach.  CoreBrace has not alleged that it provided notice of a breach to Star or that it gave Star Seismic thirty days to cure such breach.

On March 5, 2003, CoreBrace and Star Seismic entered into a Settlement Agreement.  The Settlement Agreement provides Star Seismic with a license to various buckling restrained brace technologies, including the '452 Patent.  The Settlement Agreement grants Star Seismic "a royalty-free, paid-up, world-wide, perpetual, nonexclusive, and nontransferable license in and to any and all rights held now or in the future by . . . CoreBrace in any patents and patent applications directed to or otherwise covering Buckling Restrained Braces."

CoreBrace alleges that the Settlement Agreement has terminated "under operation of law."  The Settlement Agreement provides no procedure for termination.  The Complaint, however, alleges that Star Seismic breached the Settlement Agreement by not cooperating to obtain CoreBrace exclusive and equal rights in the '452 Patent and by agreeing to grant CoreBrace a sublicense on the same terms it received from Sridhara when Star Seismic lacked the ability to do so.

## DISCUSSION

## **Motion to Dismiss**

Defendant Star Seismic moves to dismiss the first and second causes of action for breach of license and patent infringement as a matter of law and the third cause of action for breach of settlement agreement for lack of supplemental jurisdiction.

### I.  Breach of License

Star Seismic argues that the breach of license claim fails as a matter of law because CoreBrace draws an improper legal conclusion that Star Seismic's use of third-party contractors to manufacture its buckling restrained braces amounts is impermissible under the License. CoreBrace contends that the License does not allow Star Seismic to use unlicensed third-party manufacturers to make the braces because the License is not an exclusive license and does not grant "have-made rights." CoreBrace asserts that in the case of a nonexclusive license, as in this case, it is necessary to determine what rights were transferred and what rights were retained.

Under Section 2.1 of the License, Star Seismic received a nonexclusive license to "make, use, and sell Licensed Products in the Geographic Region." Star Seismic, however, could not "assign, sublicense, or otherwise transfer" the license to any party except an affiliated, parent or subsidiary company. The License also does not specifically grant "have-made" rights.

Star Seismic argues that the license grants "have-made" rights whether or not it is explicitly stated in the License. Star Seismic relies on *Carey v. United States*, 326 F.2d 975 (Ct. Cl. 1964), in which the court recognized that a patent licensee's right to "make" "permits [the licensee] to engage others to do all the work connected with the production of the article." *Id.* at 979. The court determined that although a licensee may be prevented "from transferring the right

to manufacture to anyone else," the grant of a right "to manufacture the apparatus and to sell the apparatus of the licensee's manufacture does not imply that [the licensee] could not have the apparatus manufactured for itself by someone else." *Id.*

Other courts have found that these "have made" rights exists even in situations where the license contains an express prohibition against sublicensing. *Cyrix Corp. v. Intel Corp.*, 666, 671 (E.D. Tex. 1995). The courts make a distinction between "have-made" rights and sublicensing because a sublicense allows the sublicensee to "produce for his own use or for the use of someone else" whereas have-made rights only allow a licensee to use a third-party to manufacture the apparatus for the licensee. *Carey*, 326 F.2d 979-80.

CoreBrace does not allege that Star Seismic allowed a third-party contractor to manufacture buckling restrained braces for itself. But Corebrace distinguishes the cases Star relies on the grounds that they involve exclusive licensees and licenses with no reservation of rights clauses. CoreBrace asserts that because "have-made" rights are not the subject of any express grant, they were retained by the licensor under Paragraph 2.4 of the License, which provides that "[r]ights not expressly granted to Licensee under this Agreement or the Technology License are reserved by Licensor."

CoreBrace relies on *Intel Corp. v. U.S. Int'l Trade Comm'n,* 946 F.2d 821 (Fed. Cir. 1991), to argue that the reservation of rights provision in the License in this case prohibits the transfer of have-made rights. In *Intel*, the court addressed a non-exclusive license "to make, use, and sell" that also precluded sublicensing and had a provision stating that no other licenses were granted than those expressly granted. The court construed the language of the license as not granting "have-made" rights.

But *Intel* involved the question of whether a license granted foundry rights under California law. Foundry rights are the rights to manufacture licensed products for a third party, who then sells those products under the third party's name. The "have-made" language CoreBrace relies on is the Federal Circuit quoting from the analysis of an Administrative Law Judge regarding why certain language in the agreement restricted the licensee's foundry rights. "Have-made" rights were discussed only because the third party asserted that the use of the phrase "Sanyo products" was not a restriction on Sanyo's foundry rights, but a limitation on Sanyo's "have-made" rights. The ALJ dismissed the third party's interpretation of "Sanyo products." The Federal Circuit found that the parties did not intend for Sanyo, the licensee, which had its own manufacturing facilities, to have the right to have third parties manufacture licensed products on its behalf. Based on the parol evidence of the parties' intent, the Federal Circuit concluded that the ALJ did not abuse her discretion in concluding that the phrase "Sanyo products" prohibited Sanyo from acting as a foundry for a third party.

In *Advanced Micro Devices, Inc. v. Intel Corp.*, 885 P.2d 994 (Cal. 1994), California Supreme Court concluded that any exclusion of "have made" rights from a grant to "make" must be expressly excluded from an agreement: "'have-made' rights–the right of a licensee to have a [licensed product] made for it by a third party foundry–were not expressly excluded. . . and, in the absence of any finding [to the contrary] we cannot say they were not included in the contractual right to make and sell a licensed product." *Id.* at 387 n.15.

While the License expressly excludes Star's right to sublicense, CoreBrace cannot point to any explicit elimination of "have made" rights from the License. The law clearly distinguishes between the right to "make," which includes the right to "have made" solely for the licensee, and

5

the right to sublicense by which a licensee may grant the right to a third party to "produce for his own use or for the use of someone else." *Carey*, 326 F.2d at 979-80.

Although courts have undeniably held that a patent licensee's express right to "make" or "produce" includes the right "to engage others to do all the work connected with . . . . production," CoreBrace takes the untenable position that this law applies only to situations in which the licensee's rights are so exclusive that they are tantamount to ownership of the underlying patent. *Id.* The law is not that limited.

In *Carey*, the United States succeeded to exclusive licensee status in the patent and there is no indication that any rights were withheld, but *Carey* was reiterating the rule of law that was set forth in *Westinghouse Electric & manufacturing Co. v. Washington Radio Corp.*, 294 F.671, 672-73 (2d Cir. 1923). In *Westinghouse*, the license was nonexclusive. Although *Westinghouse* did not involve a license with a reservation of rights clause, other courts, such as *Advanced Micro Devices* have found that an exclusion of "have made" rights must be express. Other decisions that have subsequently relied on *Carey* have likewise involved situations where non-exclusive licenses were at issue. *Southwire Co. v. U.S. Int'l Trade Comm'n*, 629 F.2d 1332 (C.C.P.A. 1980); *Cyrix Corp. v. Intel Corp.*, 879 F. Supp. 666, 671 (E.D. Tex. 1995), *aff'd*, 77 F.3d 1381, 1387-88 (Fed. Cir. 1996).

CoreBrace argues that if Sridhara had intended to grant Star third-party manufacturing rights, it would have been reflected in the License. It points out that there is a reference in the License to other entities purchasing, renting, or leasing Licensed Products, but no other entity is referenced as manufacturing Licensed Products. But the language of Paragraph 6.1(c) of the License refers to "a third party whose services have been contracted by [Star]." This paragraph

acknowledges that improvements and/or modifications may be made to the technology by Star or by third parties contracted by Star. In addition, paragraph 7.2 requires Star to maintain records relating to contracts with third parties, including supply contracts and service contracts. This paragraph also appears to acknowledge that Star may engage third-parties in the manufacturing process. The provisions of the License, therefore, do not demonstrate an intent to preclude the grant of "have-made" rights.

CoreBrace further contends that Star Seismic's argument that it has "have-made" rights is further negated by the fact that the patent includes "method-of-manufacture" claims in addition to its apparatus claims. CoreBrace claims that for a third-party manufacturer to be authorized to make the product covered by the '452 Patent, it must also have the right to use the patent. Star does not have the ability under the License to transfer those rights to its manufacturer. But CoreBrace has not provided any legal support for this assertion.

The court concludes that nothing in the License precludes "have-made" rights. As part of Star Seismic's rights to "make" the licensed product under the License, Star Seismic had the right to have a third-party manufacture the licensed product for it. Accordingly, there is no basis for a breach of license claim.

## II. Termination of License

Even if this court found that Star Seismic's use of a third-party manufacturer breached the License, CoreBrace did not follow the termination provisions of the License. The License cannot be terminated unless there is a breach, written notice of the breach, and thirty days opportunity to cure the breach. CoreBrace has not alleged that it previously provided Star Seismic with any notice of any alleged breach or that it provided Star Seismic with thirty days to cure such breach.

CoreBrace, however, asserts that Star Seismic's breach of the License is incurable.  Star Seismic has placed braces in buildings around the country and cannot take them out.  CoreBrace relies on cases holding that where the breach is impossible to cure, notice is not required prior to termination.

The cases relied on by CoreBrace to support its position that compliance with the termination provisions would have been futile are distinguishable.  The alleged breaches in this case involve relatively minor provisions and the cures required are minor in comparison to the purpose of the agreement.  Providing notice that Star should make the product itself, cease using a third party, or have the third-party obtain a license is not impossible or futile.

CoreBrace has not alleged the kind of frustration of purpose that is required to excuse compliance with the termination provisions of a contract.  The purpose of the License is to grant Star Seismic the right to engage in the brace business so that the inventor could collect a royalty on his invention.  CoreBrace has failed to allege the type of egregious behavior that defeats the very purpose of agreements.  If the use of a third party manufacturer could even be considered a breach of the License, it is not a material breach because timely royalties have been paid for all the braces that were manufactured with third party assistance.  Moreover, CoreBrace did not give any kind of warning that it considered Star Seismic in breach of the License.  CoreBrace could have notified Star that it had to cease using third-party manufacturers or have the third party obtain a license as well.  Because there is no basis for this court to find that notice would have been futile, the court concludes that CoreBrace did not follow the proper procedures for terminating the License.

The law, as established by this court in *Elite Nutrition v. Kocheskov*, 2007 WL 4210188

(D. Utah 2007), dictates that where a "Plaintiff does not recite any facts supporting compliance with the conditions of termination" of a license to intellectual property, the licensee's rights under that agreement remain intact and "Plaintiff's claims for . . . infringement fail to state a claim for which relief may be granted."

CoreBrace ignores *Elite Nutrition* and instead relies on basic contract law that a party to a contract cannot claim its benefits where it is the first to violate the contract's terms. In this case, Star Seismic is not trying to recover on the contracts in question nor is it claiming the breach of a contract that it breached first. Rather, Star Seismic is relying on its license as a defense to a patent infringement claim. The infringement claim necessarily requires prior termination of the License. Under *Elite Nutrition*, even if Star had breached the License or Settlement Agreement, as alleged, both of these agreements would have to be terminated for the infringement claim to stand.

Accordingly, the court concludes that the License has not been terminated, and Star Seismic still retains the right to "make, use, and sell" braces under the License. The License provides for termination for a breach of any term of the agreement that is not cured within 30 days.

**III.  Remaining Claims**

Because this court has concluded that Star Seismic remains licensed to the '452 Patent under the License, the License is a defense to infringement. In addition, because both the patent infringement claim and the breach of license claim fail as a matter of law, no federal question or jurisdiction remain. The court declines to exercise supplemental jurisdiction over CoreBrace's breach of the settlement agreement claim, which is a state law claim. The court may decline to

exercise supplemental jurisdiction when it dismisses all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

## Motion for Rule 11 Sanctions

Star Seismic argues that CoreBrace has not made a reasonable inquiry into the facts of whether or not Star Seismic actually breached the License or Settlement Agreement or the law applicable to its claims. Star Seismic asserts that CoreBrace has filed this case merely to harass it and to cause it to incur unnecessary legal expenses in an effort to diminish Star's ability to compete with CoreBrace.

Star Seismic, however, does not cite to any facts that would make CoreBrace's Complaint frivolous. In addition, the parties have both asserted competing views of the applicable law. The court finds no basis for awarding sanction under Rule 11.

## CONCLUSION

Star Seismic's Motion to Dismiss is GRANTED, and CoreBrace's breach of license and patent infringement causes of action are dismissed. CoreBrace's breach of settlement agreement claim is dismissed without prejudice because this court declines to exercise supplemental jurisdiction over the claim.

DATED this 18th day of July, 2008.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge